The STATE of Ohio, Appellant,

v.

GAINES et al., Appellees.

[Cite as *State v. Gaines*, 193 Ohio App.3d 260, 2011-Ohio-1475.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

Nos. CA2010–07–010 and CA2010–07–011.

Decided March 28, 2011.

David Fornshell, Special Appointed Clinton County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellant.

Brannon & Associates, Dwight D. Brannon, and Matthew C. Schultz, for appellees.

———————

YOUNG, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the pretrial decision of the Clinton County Court of Common Pleas dismissing indictments against defendants-appellees, Jennifer and William Gaines.

{¶ 2} In July 2009, Jennifer Gaines sent a certified letter to Clinton County Sheriff Ralph Fizer Jr., generally accusing him of improperly using the National Drug Intelligence Center to learn private information regarding citizens and providing that information to a local businessman. Jennifer also accused the sheriff of improperly obtaining the cellular phone number of her seven-year-old daughter and providing that number to Larry Roberts II, the owner of R & L Carriers, where her husband William Gaines used to work. Jennifer asserted that she and her husband had contacted the local branch of the Federal Bureau of Investigation ("FBI") regarding the sheriff's activities. Jennifer ended the letter by stating:

{¶ 3} "Please have your Legal Counsel contact us within 14 days. We would like to come to an agreement, however, I am attaching a list of media outlets I am fully-prepared to discuss the involvement between Larry Roberts II, R & L Carriers, Ralph D. Fizer, Jr., and the Clinton County Sheriff Department. If all parties have not contacted us, we will make out a formal complaint to the U.S. Department of Justice (Criminal Division). I am quite certain most news stations would be very eager to investigate how a Local Sheriff provides information to the owners of a nationwide company." (Underlining sic.)

{¶ 4} On July 21, 2009, Clinton County Assistant Prosecuting Attorney Andrew McCoy called Jennifer, telling her that he represented the sheriff. During the phone call, McCoy attempted to elicit more information regarding the Gaineses' accusations against the sheriff. Jennifer reiterated their intent to involve the Department of Justice in the event that an agreement could not be reached. When asked whether an apology would suffice, Jennifer replied that it would not. After McCoy brought up the subject of a possible monetary settlement, Jennifer stated that they wanted $30,000 to $40,000.

{¶ 5} The following day, McCoy called Jennifer back to arrange a meeting at the prosecutor's office. During the phone call, Jennifer stated that her main priority was for the sheriff to stop providing private information regarding citizens to Roberts; she also reiterated their intent, if need be, to contact the Department of Justice and the media regarding the sheriff's activities. Unbeknownst to Jennifer, both phone calls were recorded.

{¶ 6} The next day, the Gaineses met with McCoy at the prosecutor's office. An investigator from the Ohio Attorney General's Office, Bureau of Criminal Investigation, was present. Unbeknownst to the Gaineses, the meeting was recorded. During the meeting, William claimed to have overheard several telephone conversations between the sheriff and Roberts during which Roberts asked the sheriff to provide him with information on certain persons. William also claimed that the Roberts family was involved in numerous criminal activities, such as soliciting murder-for-hire, illegally dumping hazardous waste, and operating illegal trailers in Clinton County. The Gaineses reiterated their accusation that the sheriff had improperly given their daughter's phone number to Roberts. Near the end of the meeting, William stated, "We'll settle for [$30,000] from the Sheriff's department and I want the Robert[s] to pay my house off." The Gaineses were arrested after the meeting.

{¶ 7} In August 2009, the Gaineses were separately indicted on one count of extortion in violation of R.C. 2905.11(A)(4). The indictments alleged that the Gaineses, "with the purpose of obtaining * * * $40,000 Cash monies, did utter or threaten calumny against Sheriff Ralph D. Fizer, Jr." The Gaineses filed a multiground motion to dismiss the indictments as well as several other motions.

The Gaineses argued that the indictments were defective because the facts alleged did not constitute extortion.

{¶ 8} A bill of particulars, filed in March 2010, charged the Gaineses with extortion on the grounds that (1) in July 2009, Jennifer sent a letter to the sheriff falsely accusing him of acts, (2) the letter stated that if there was no agreement, Jennifer would provide information to numerous media agencies and to the U.S. Department of Justice, (3) during two phone calls with McCoy, Jennifer stated that she would not contact the FBI, file suit, or contact the media if she were paid $30,000 to $40,000, and (4) during a meeting with McCoy, William stated that it was going to "look bad" for the sheriff and his family and the county, and that he (William) wanted $30,000 to resolve the matter. The Gaineses renewed their motion to dismiss the indictments on the ground the facts alleged did not constitute extortion.

{¶ 9} Following an evidentiary hearing on the Gaineses' various motions, the trial court dismissed the indictments on June 22, 2010. Relying on the Ohio Supreme Court's decisions in *Mann v. State* (1890), 47 Ohio St. 556, 26 N.E. 226, *State v. Barger* (1924), 111 Ohio St. 448, 145 N.E. 857 (and their progeny), and *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, the trial court found that "the alleged acts of William * * * and Jennifer Gaines as set forth in the Indictment, the Bill of Particulars, and as developed at the April 21, 2010 Motions Hearing do not constitute the criminal offense of extortion."

{¶ 10} The state appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} "The trial judge erred when it granted the appellees' motions to dismiss since the judge misapplied *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493 [894 N.E.2d 671], and erred in holding an evidentiary hearing as to the general issue in this case."

{¶ 13} In its decision dismissing the indictments, the trial court relied on *Brady* for the proposition that a court may, on a pretrial motion to dismiss an indictment under Crim.R. 12, "consider evidence beyond the face of the indictment if the matter is capable of determination without trial of the general issue." The state argues that while the trial court correctly stated the holding of *Brady,* it misapplied it by improperly considering evidence beyond the face of the indictment that went to the general issue in this case, that is, whether the Gaineses committed extortion. We agree.

{¶ 14} This court reviews a trial court's decision to dismiss an indictment de novo, without deference to the decision reached by the lower court. *State v. Cash,* Cuyahoga App. No. 95158, 2011-Ohio-938, 2011 WL 743091, ¶ 4; *State v. Mobus,* Butler App. No. CA2005–01–004, 2005-Ohio-6164, 2005 WL 3096614, ¶ 25.

{¶ 15} Crim.R. 12(C) allows pretrial motions regarding "any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." Crim.R. 12(F) allows a trial court to "adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means."

{¶ 16} Crim.R. 12(C) "makes clear that a pretrial motion to dismiss can only raise matters that are capable of determination without a trial on the general issue. The Ohio Rules of Criminal Procedure do not provide for the equivalent of a civil motion for summary judgment." *State v. Riley* (Dec. 31, 2001), Butler App. No. CA2001–04–095, 2002 WL 4484, at *2. Therefore, a Crim.R. 12 pretrial motion to dismiss cannot reach the merits or substance of the allegations. *State v. Peters*, Cuyahoga App. No. 92791, 2009-Ohio-5836, 2009 WL 3681639, ¶ 7. Rather, under Crim.R. 12(C), the proper determination is whether the language within the indictment alleges the offense. Id. at ¶ 8. When deciding on the validity of a charging instrument, a trial court is precluded from considering whether the prosecution could prove the elements of the charged offenses. See *State v. Palmer*, Franklin App. Nos. 09AP–956 and 09AP–957, 2010-Ohio-2421, 2010 WL 2171662.

{¶ 17} In *Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, the Ohio Supreme Court held that "Crim.R. 12 permits a court to consider evidence beyond the face of the indictment when ruling on a pretrial motion to dismiss an indictment *if the matter is capable of determination without trial of the general issue.*" Id. at ¶ 3. (Emphasis added.)

{¶ 18} In *Brady*, Daniel Brady was charged with numerous counts of pandering obscenity and sexually oriented material involving a minor. Brady moved to dismiss the indictment, claiming that he could not receive a fair trial without the benefit of expert testimony. The trial court dismissed the indictment, and the Eleventh Appellate District upheld the dismissal. The appellate court found that Brady was denied the assistance of an expert witness because the expert would be subject to federal prosecution for viewing or analyzing the state's evidence, which, in turn, would make it impossible for Brady to receive a fair trial. The state appealed, claiming that Brady's motion dealt with facts that went beyond the face of an indictment and events that had not yet occurred and was therefore an improper motion for summary judgment under Crim.R. 12. The Supreme Court disagreed, stating:

{¶ 19} "Brady's motion did not embrace what would be the general issue at trial. Instead, it alleged that the FBI's enforcement of federal child pornography laws against his expert compromised his constitutional right to a fair trial by restricting the expert's ability to perform tasks deemed necessary to Brady's defense. Because Brady's pretrial motion to dismiss did not require a determina-

tion of the general issue for trial, Crim.R. 12(C) allowed the trial court to consider it. Moreover, because Crim.R. 12(F) expressly permits a court to consider briefs, affidavits, the proffer of testimony, and other exhibits, the trial court could properly consider evidence beyond the face of the indictment in ruling on Brady's motion to dismiss." *Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, at ¶ 18.[1]

{¶ 20} In the case at bar, the Gaineses moved to dismiss the indictments on the ground that pursuant to *Mann*, 47 Ohio St. 556, 26 N.E. 226, and *Barger*, 111 Ohio St. 448, 145 N.E. 857, their conduct did not constitute the crime of extortion; thus, the indictments were not sufficient to state a crime in Ohio. Relying upon *Mann* and *Barger* (and their progeny in Ohio and federal courts), and relying upon the testimony of McCoy and two other state witnesses at the evidentiary hearing pursuant to *Brady*, the trial court found that the conduct of the Gaineses as alleged in the indictments and the bill of particulars, and as developed at the hearing did not constitute the criminal offense of extortion. The trial court found that the testimony indicated that "there existed some conceivable basis for Jennifer * * * to believe the cell phone of her daughter had been provided to * * * Roberts through the Sheriff's Department, whether this belief was actually accurate or not." Further, Jennifer's letter "dealt more with going public than pursuing a monetary settlement." The trial court relied upon *Mann, Barger,* and their progeny for the proposition that a threat to sue or go public absent payment of a settlement does not constitute extortion under Ohio law.[2]

{¶ 21} We find that unlike in *Brady*, the Gaineses' motion to dismiss addressed the very issue to be determined at trial and required a determination of the general (and ultimate) issue for trial, to wit, whether the Gaineses' alleged acts constituted extortion under Ohio law. In turn, a review of the trial court's decision dismissing the indictments clearly shows that the trial court considered the alleged facts of the case and applied Ohio and federal cases to the facts. The

---

1. Although the Ohio Supreme Court held that the trial court was allowed to consider Brady's motion to dismiss under Crim.R. 12(C), it nevertheless reversed the appellate court's decision upholding the dismissal of Brady's indictment. The Supreme Court found that "[b]ecause it is possible for Brady's expert to examine and analyze the state's evidence at the prosecutor's office or another government facility, the trial court abused its discretion in determining, *prior to trial*, that the lack of an exception for expert witness in the federal child pornography laws deprived Brady of the assistance of an expert and further deprived him of the ability to receive a fair trial." (Emphasis sic.) *Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, at ¶ 49.

2. In *Mann*, the Ohio Supreme Court held that "[a] demand made by the owner upon the offender, for a reasonable compensation for property criminally destroyed by the latter, the owner at the time accusing him of the crime, and threatening to prosecute him therefor if the demand is not complied with, does not come within the provision of section 6830 of the Revised Statutes." *Mann*, 47 Ohio St. 556, 26 N.E. 226, paragraph two of the syllabus.

trial court did not simply determine whether the indictments alleged an offense against the Gaineses. Rather, the trial court engaged in a pretrial determination of the general issue of the case, and therefore violated Crim.R. 12(C). See *Brady* at ¶ 16–18; *State v. Peters,* 2009-Ohio-5836, 2009 WL 3681639. Whether the evidence shows that the Gaineses committed the indicted offense of extortion is a question to be determined later by the trier of fact. See *Riley,* 2002 WL 4484.

{¶ 22} We therefore find that the trial court (1) misapplied *Brady,* (2) in light of *Brady* and Crim.R. 12(C), could not consider the Gaineses' motion to dismiss the indictments, and (3) erred in dismissing the indictments against the Gaineses.

{¶ 23} Accordingly, the state's first assignment of error is well taken and is sustained. The trial court's judgment dismissing the indictments against the Gaineses is reversed and remanded to the trial court for further proceedings consistent with this decision.

{¶ 24} Assignment of Error No. 2:

{¶ 25} "The trial judge erred when he dismissed the indictments since he misapplied *Mann v. State* (1890), 47 Ohio St. 556 [26 N.E. 226], and *State v. Barger* (1924), 111 Ohio St. 448 [145 N.E. 857]."

{¶ 26} As stated earlier, in its decision dismissing the indictments, the trial court relied upon *Mann* and *Barger* and their progeny in Ohio and federal courts for the proposition that a threat to sue or go public absent payment of a settlement does not constitute extortion under Ohio law. The state argues that while the trial court correctly stated the holding in *Mann* and *Barger* as set forth in the decisions' syllabus, it misapplied both holdings.

{¶ 27} In light of our holding regarding the state's first assignment of error, we find it unnecessary to reach the issues presented in the state's second assignment of error. Accordingly, the state's second assignment of error is moot.

■ {¶ 28} In an effort to defend the trial court's judgment dismissing the indictments against them, the Gaineses raise in their appellate brief three alternative bases for affirming the judgment. Specifically, the Gaineses argue that the trial court was required to dismiss the indictments because they were based on evidence that was (1) obtained through prosecutorial fraud, (2) inadmissible under Evid.R. 408, and (3) obtained through outrageous government conduct. The Gaineses' motion to dismiss the indictments raised these issues but they were not addressed by the trial court.

{¶ 29} Although the Gaineses did not file a cross-appeal, we are not precluded from reviewing their arguments. Under App.R. 3(C)(2), an appellee is not required to file a cross-appeal if he or she seeks to support or defend the trial court's judgment on grounds rejected or not considered by the trial court. See

*Cincinnati Gas & Elec. v. Joseph Chevrolet Co.*, 153 Ohio App.3d 95, 2003-Ohio-1367, 791 N.E.2d 1016; *Parton v. Weilnau* (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719. Under App.R. 3(C)(2) and R.C. 2505.22, we may consider cross-arguments only if we have otherwise determined to reverse the trial court's judgment. *Cincinnati Gas & Elec.* at ¶ 12; *Parton* at paragraph seven of the syllabus. We address the Gaineses' cross-arguments.

{¶ 30} "The trial court was required to dismiss the indictment because it was based on evidence obtained through prosecutorial fraud."

{¶ 31} The Gaineses assert that McCoy's dishonest and misleading conduct in dealing with them constituted prosecutorial fraud in violation of the Ohio Rules of Professional Conduct, warranting the dismissal of the indictments against them. As a result, the trial court's judgment dismissing the indictments should be affirmed on this basis. We disagree.

{¶ 32} The Gaineses claim that McCoy violated Prof.Cond.R. 4.1 (prohibiting an attorney from making a false statement to a third person), 4.2 (generally prohibiting an attorney from communicating about the subject of representation with a person the attorney knows to be represented by another attorney), and 8.4(c) (prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The Gaineses further claim that pursuant to *Ohio State Bar Assn. v. Stern*, 103 Ohio St.3d 491, 2004-Ohio-5464, 817 N.E.2d 14, attorneys are forbidden from surreptitiously recording conversations with opposing parties.

{¶ 33} It is well established that "the Ohio Supreme Court has exclusive jurisdiction to determine violations of attorney disciplinary rules. * * * All grievances involving alleged misconduct by attorneys and judges are to be brought and disposed of in accordance with the provisions of Rule 5 of the Supreme Court Rules for the Government of the Bar of Ohio." *Madison Cty. Bd. of Commrs. v. Bell*, Madison App. No. CA2005–09–036, 2007-Ohio-1373, 2007 WL 879627, ¶ 15. See also *Watterson v. King*, 166 Ohio App.3d 704, 2006-Ohio-2305, 852 N.E.2d 1278 (with regard to a complaint of misconduct by an attorney for violation of a disciplinary rule, jurisdiction is with the Ohio Supreme Court). We note that *Stern*, the Ohio Supreme Court decision cited by the Gaineses, was a disciplinary case against a former prosecuting attorney charged with surreptitiously videotaping a meeting.

{¶ 34} In light of the foregoing, we do not address the Gaineses' argument. The proper method by which to raise their allegations of prosecutorial fraud is not by a brief filed before this appeals court. *Bell* at ¶ 15.

{¶ 35} "The trial court was required to dismiss the indictment because it was based on evidence that was inadmissible pursuant to Evid.R. 408."

{¶ 36} Next, the Gaineses assert that the indictments were based on inadmissible evidence under Evid.R. 408. Specifically, the Gaineses assert that "every whit of evidence—from Jennifer Gaines' first letter through the final settlement meeting between Mr. and Mrs. Gaines and Mr. McCoy—was the result of a lengthy settlement negotiation regarding Mr. and Mrs. Gaines' claims for violation of privacy and their concerns for future violations." Because "[n]one of this 'evidence' is admissible pursuant to Evid.R. 408," the trial court's judgment dismissing the indictments should be affirmed on this basis. We disagree.

{¶ 37} Evid.R. 408 provides that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount."

{¶ 38} Evid.R. 408 provides for the exclusion of settlement offers and acceptances, as well as the exclusion of evidence of conduct or statement made during the course of compromise or settlement negotiations. Weissenberger's Ohio Evidence Treatise (2010) 113, Section 408.1. However, Evid.R. 408 "excludes evidence of compromise negotiations only where such evidence is offered to establish liability for, or invalidity of, a claim or its amount." Id. at 116, Section 408.4.

{¶ 39} We decline to apply Evid.R. 408 to a criminal case on the basis of *State ex rel. Celebrezze v. Howard* (1991), 77 Ohio App.3d 387, 602 N.E.2d 665. As the Tenth Appellate District aptly stated, "[t]he language employed by Evid.R. 408 tends to support the conclusion that it is meant to exclude conduct or statements in the compromise of civil actions only. The rule speaks in terms of disputed claims as opposed to alleged crimes or offenses. * * * When Evid.R. 408 is read in conjunction with Evid.R. 410, it becomes more apparent that Evid.R. 408 is intended purely in regard to compromises in civil actions. Evid.R. 410 excludes statements made during plea negotiations in any subsequent civil or criminal action. Evid.R. 410 expressly applies to both civil and criminal actions, whereas Evid.R. 408 includes no such expansive language. Appellant would ask this court to expand Evid.R. 408 to cross over from one type of action to another when the language of the rule, as well as complementary provisions of the Rules of Evidence, would seem to indicate otherwise. We assume that, by promulgating two separate and distinct rules, the Supreme Court intended Evid.R. 408 to apply to compromises in civil matters only. Consequently, we decline the expansion of Evid.R. 408 beyond the present interpretation." Id. at 391. See also *State v. Cassell,* Franklin App. Nos. 08AP–1093 and 08AP–1094, 2010-Ohio-1881, 2010 WL 1731238 (Evid.R. 408 applies only to civil cases).

{¶ 40} Accordingly, the Gaineses' argument has no merit.

{¶ 41} "The trial court was required to dismiss the indictment because it was based on evidence obtained through outrageous governmental conduct."

{¶ 42} Finally, the Gaineses assert that "the litany of prosecutorial abuses and ethical violations, the extraordinary due process violations, the objectionably abusive treatment of citizens exercising their right as citizens to petition their government for redress, the undisguised attack on citizens who challenge the abuse of governmental authority, [and] the intentional interference with First Amendment rights" as committed by the state in this case constitute outrageous government conduct, warranting the dismissal of the indictments against them. As a result, the trial court's judgment dismissing the indictments should be affirmed on this basis. We disagree.

{¶ 43} The doctrine of outrageous government conduct is a due-process defense that is determined as a matter of law prior to trial, *State v. Grunder*, Medina App. No. 04CA0071–M, 2005-Ohio-2145, 2005 WL 1026690, ¶ 4, and that focuses on the government's conduct. *State v. Cunningham*, 156 Ohio App.3d 714, 2004-Ohio-1935, 808 N.E.2d 488, ¶ 14. To obtain dismissal of an indictment based upon a claim of outrageous government conduct, a defendant must establish that the government engaged in outrageous behavior in connection with the alleged criminal events and that due-process considerations bar the government from prosecuting the defendant. *United States v. Cuervelo* (C.A.2, 1991), 949 F.2d 559, 565, citing *United States v. Russell* (1973), 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366.

{¶ 44} The outrageous-government-conduct defense "is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating." *United States v. Mosley* (C.A.10, 1992), 965 F.2d 906, 910; *Cunningham* at ¶ 14, 17. Two factors form the underpinnings for most cases in which the outrageous-government-conduct defense has been upheld: (1) government creation of the crime and (2) substantial coercion. *Mosley* at 910; *Cunningham* at ¶ 27. "[T]o constitute outrageous conduct, revulsion to the tactics [used by the state] must be overwhelming and universal," *Cunningham* at ¶ 29; "coercion of any type must be particularly egregious." *Mosley* at 912.

{¶ 45} We find that the state's conduct in contacting Jennifer and talking to her on the phone on two separate occasions, followed by the state's meeting with the Gaineses, while investigating the allegations raised by Jennifer in her letter to the sheriff, and while probing what kind of settlement the Gaineses were seeking, did not constitute outrageous government conduct. We cannot say that the state's conduct in its investigation of the Gaineses was outrageous and so clearly intolerable as to shock the universal sense of justice. *Mosley* at 910.

Thus, the outrageous-government-conduct doctrine does not provide the Gaineses with a defense to their prosecution.

{¶ 46} We note that on appeal, the Gaineses also assert that the trial court was required to suppress their statements as they were the product of coercion. On the day they moved to dismiss their indictments, the Gaineses also filed several other motions, including a motion to suppress evidence. Because it dismissed the indictments, the trial court did not rule on the motion to suppress. In light of the fact that we are reversing the trial court's judgment dismissing the indictments and remanding the case to the trial court, we decline to address the Gaineses' argument.

{¶ 47} For all of the foregoing reasons, the trial court's judgment dismissing the indictments against the Gaineses is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

{¶ 48} The judgment is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

POWELL, P.J., and HENDRICKSON, J., concur.