The STATE of Ohio, Appellee,

v.

CUNNINGHAM, Appellant.

[Cite as *State v. Cunningham,* 156 Ohio App.3d 714, 2004-Ohio-1935.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2003 CA 17.

Decided April 16, 2004.

Anthony E. Kendell, Miami County Assistant Prosecuting Attorney, for appellee.

L. Patrick Mulligan, for appellant.

FREDERICK N. YOUNG, Judge.

{¶ 1} William E. Cunningham is appealing from the judgment of the Common Pleas Court of Miami County, Ohio, finding him guilty of importuning by soliciting sexual relations on the Internet with a person he believed to be a 14–year–old girl but who was actually a police officer. After his counsel's two motions to dismiss on the same grounds as presented in this appeal were overruled, he ultimately pled no contest and was sentenced to three years' community control plus 90 days' incarceration.

{¶ 2} His counsel brings the following two assignments of error in this appeal:

{¶ 3} "The trial court erred in failing to grant the appellant's motion to dismiss due to outrageous government conduct and the violation of the appellant's right to due process.

{¶ 4} "The trial court erred in failing to grant the appellant's motion to dismiss due to a violation of the Commerce Clause of the U.S. Constitution."

{¶ 5} These two issues were both raised in the trial court in two separate motions to dismiss, which the court dealt with as follows:

{¶ 6} "The Defendant, William Cunningham, filed and later made an oral motion to dismiss the indictment on the basis that Ohio Revised Code Section[s] 2907.07(D), (E), and (F) violate the Commerce Clause of the United States Constitution. Later, the Defendant filed and made an oral motion to dismiss the indictment on the basis that the officers allegedly demonstrated outrageous governmental conduct in luring the Defendant into this jurisdiction in order to procure an arrest and subsequently a conviction.

{¶ 7} "A hearing was held with the Defendant and his Attorney, L. Patrick Mulligan present. The State was represented by Anthony E. Kendell. At the hearing the parties submitted joint exhibits that will constitute the facts upon which these motions are decided. The exhibits include the Sheriff Deputy's reports, transcripts of communications between the Defendant and the law enforcement officers, a photograph of the girl that was sent to the Defendant on the Internet as the purported victim, and a photograph of the Defendant which he sent to the law enforcement officer.

{¶ 8} "Since questions of outrageous governmental conduct are fact sensitive, the material facts contained in the transcripts of the communications will be set forth. These exhibits indicate that on February 26, 2002 at 12:17 p.m., Detective Brian Peoples of the Miami County Sheriff's Office was conducting an undercover investigation on the Internet. Peoples was posing as a fourteen-year-old girl named 'Missy' from Troy, Ohio. Peoples entered a chat room entitled 'I love much older men.' Peoples (Missy) was contacted via Instant Messenger by the

Defendant who was operating under the screen name 'ckbuilder' who later identified himself as 'Bill.'

{¶ 9} "The transcripts of the communications are summarized as follows. In the summary, Peoples will at times be referred to by feminine pronouns for ease in describing the facts. The Defendant indicated he was from Tennessee and wanted to know where Peoples (she) lived. The Defendant asked Peoples if she could trade pictures. Peoples received a photograph of the Defendant standing on top of a rock formation. Peoples sent the Defendant a photograph of a law enforcement intern when she was fourteen at the time the photograph was taken."

{¶ 10} The court then went on to list the various sexual questions and remarks made by Cunningham to his supposed Internet friend Missy. There is no need to repeat them here; suffice it to say for our purposes that they are very sexually explicit and quite graphic. Cunningham ended the Internet conversation by telling Missy that he was first going to be picking up another girl, "Molly," from Xenia to join them. Cunningham was in Tennessee at the time and told Missy in Miami County that it would be about a five-hour drive and that he was looking forward to it. The trial court continued:

{¶ 11} "On February 28 the Defendant failed to meet Peoples because he was arrested by Xenia police while attempting to meet 'Molly,' the other supposed fourteen-year-old virgin. Molly was actually a Xenia policeman. The Defendant offers no evidence as to his communications with 'Molly.'

{¶ 12} "The concept of outrageous governmental conduct as a due process defense was first recognized by dictum in *United States v. Russell*, 411 U.S. 423, 431–32, 36 L.Ed.2d 366, 93 S.Ct. 1637, and a later plurality decision, *Hampton v. United States*, 425 U.S. 484, 48 L.Ed.2d 113, 96 S.Ct. 1646 (1976). In *Russell*, supra, the Supreme Court stated: '[W]e may some day be presented with a situation in which the conduct of the law enforcement agencies is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction.'

{¶ 13} "In *Hampton*, supra, at 494–95 [96 S.Ct. 1646, 48 L.Ed.2d 113], the court left open the possibility that the defense might be successfully invoked despite the unavailability of the entrapment defense due to predisposition. The Supreme Court has never reversed a case on this concept, with the possible exception of *Jacobson v. U.S.*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174, where the Supreme Court reversed a conviction on the grounds of entrapment. *U.S. v. Holloway*, 906 F.Supp. 1437, (1995 DC Kansas).

{¶ 14} "The outrageous governmental conduct defense 'is an extraordinary defense reserved for only the most egregious circumstances.' *U.S. v.*

*Mosley,* 965 F.2d 906, at 910 [C.A.10, 1992]. This defense is distinct from the entrapment defense because entrapment focuses upon the predisposition of the defendant to commit the crime. See *Jacobson, supra.* In contrast, the outrageous governmental conduct defense focuses upon the government's conduct. *Mosley,* 965 F.2d at 909. *U.S. v. Sneed* [C.A. 10, 1994], 34 F.3d 1570, at 1577.

{¶ 15} "Another difference between the two is that the due process defense is determined as a matter of law prior to trial and the entrapment defense is determined by the trier of fact based upon the evidence presented at trial. *State v. Feltner,* (August 16, 1989), Miami App. No. 88–CA–34, Unreported, 1989 WL 94550. However, the burden is on the Defendant to prove both defenses. *U.S. v. Pedraza* [C.A. 10, 1994], 27 F.3d 1515, 1521, certiorari denied [513 U.S. 941], 130 L.Ed.2d 303, [115] S.Ct. 347 (1994).

{¶ 16} "Defendants have asserted this defense against government sting operations. In *Mosley,* supra, the court stated:

{¶ 17} "The outrageous governmental conduct defense 'is an extraordinary defense reserved only for the egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense.' *Mosley,* supra, at 910. *U.S. v. Sneed,* supra, at 1576.

{¶ 18} "There is a division of authority in Ohio as to whether this defense can be asserted separately from entrapment. In *State v. Jurek* (1989), 52 Ohio App.3d 30 [556 N.E.2d 1191], and *State v. Latina* (1984), 13 Ohio App.3d 182 [13 OBR 229, 468 N.E.2d 1139], the Cuyahoga [County] Court of Appeals held that the two defenses were not separable. The Second District Court of Appeals held otherwise. *State v. Napier* (May 22, 1998), Montgomery App. No. 16550, Unreported, 1998 WL 257871; *State v. Feltner,* supra. In *Feltner,* the Second District Court of Appeals followed a footnote contained in *State v. Doran* (1983), 5 Ohio St.3d 187 at 192 [5 OBR 404, 449 N.E.2d 1295]:

{¶ 19} "In *Doran,* a case in which the Supreme Court of Ohio declined to find entrapment on predisposition grounds, the Court also stated (at footnote 4 of the Opinion of the Court):

{¶ 20} "4. An accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process. *Rochin v. California* (1952), 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] ... In our view, a 'due process' defense is analytically distinct from the defense of entrapment.

{¶ 21} "This Court operates under the interpretive shadow of the Second District, so these holdings will be followed.

{¶ 22} "Some courts have limited the defense to government conduct involving coercion, violence, or brutality to the person. *U.S. v. Walls* (1995), 315 U.S.App. D.C. 111, 70 F.3d 1323, 1330; *U.S. v. Gaviria* (1997), 325 U.S.App. D.C. 322, 116 F.3d 1498 at [1534].

{¶ 23} "In *U.S. v. Duncan* ([C.A.7] 1990), 896 F.2d 271, the court determined that this due process defense was not applicable to a child pornography sting operation. The Customs Service advertised for sale illegal pornography that had been seized in other investigations. Upon delivery of the material, a search warrant to search the defendant's home and additional illegal pornographic material was seized. It is noteworthy that the Customs Service sent the brochures advertising the materials and order forms to the Defendant's home. He was targeted along with approximately 2,000 other names and addresses that had been obtained from lists that had been seized in other investigations and a Postal Inspection Service Survey conducted under the name of 'Crusaders for Sexual Freedom.'

{¶ 24} "The *Duncan* court reiterated its language in a prior case at page 275:

{¶ 25} " 'In seeking to detect and punish crime, law enforcement agencies frequently are required to resort to tactics which might be highly offensive in other contexts. Granting that a person is predisposed to commit an offense, we think that it may be safely said that investigative officers and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process ...'

{¶ 26} "Although the focus of the Defendant's predisposition is not the focus here, it is sometimes evaluated to some extent to measure the nature of the government's conduct. People's conduct was not outrageous given the fact the Defendant was cruising this particular Internet site.

{¶ 27} "In *Sneed,* supra, a case involving a sting operation, the court noted that two factors form the underpinnings for most cases where the outrageous conduct defense has been upheld: (1) government creation of the crime, and (2) substantial coercion.

{¶ 28} "As to the first element, Peoples did not create the crime. Peoples merely gave the Defendant the opportunity to solicit sex from a person who the Defendant believed was a fourteen-year-old minor on the Internet. The situation is analogous to the traditional solicitation case where a 'john' solicits sex from an undercover officer posing as a prostitute on a street corner. The fact that the undercover officer is present on the street corner posing as a prostitute does not mean that the crime was created by the officer. Rather, the undercover officer presents the opportunity for the solicitation to occur. The offender initiates the unlawful solicitation conduct under the mistaken assumption that the officer is a

prostitute. *Cleveland v. Bordenkircher* (March 4, 1993), Cuyahoga App. No. 61861, Unreported, 1993 WL 63377.

{¶ 29} "Here, 'Missy' did no more than stand on a cyberspace street corner which could be frequented by females looking to have sex with older men and answer the Defendant's questions. Although there may be disagreement in the [populace] whether such activity is fair in order to constitute outrageous conduct, revulsion to the tactics must be overwhelming and universal. Use of decoy prostitutes as a means to snare 'johns' has never been considered so egregious by any court to support this due process defense.

{¶ 30} "As to the second element, the law enforcement conduct here was not coercive. The law enforcement contribution to the mix was passive. Peoples situated the persona of Missy in a chat room that would likely be frequented by adults looking to have illegal sex with minors. Peoples did not initiate any messages that included a desire for the fictitious fourteen-year-old to have sex beyond the inference of her communication presence in the chat room. Peoples merely responded to the questions and ideas that were repeatedly proposed by the Defendant. There was no coercion present here.

{¶ 31} "Finally, the Defendant intimated at the hearing that the photograph of the girl sent to him was so overly enticing that use of it by Peoples was outrageous. The photograph depicts a pretty, wholesome, and apparently engaging fourteen-year-old girl. The photograph may have been sufficient in the Defendant's mind to warrant driving an Infinity Q–45 five hours from Tennessee, but is not so overwhelming to launch a thousand ships. The Helen of Troy Defense is not applicable here.

{¶ 32} "For all of the foregoing reasons the Defendant's motion to dismiss for outrageous governmental conduct is overruled.

{¶ 33} "The Defendant's other motion to dismiss contends that O.R.C. 2907.07(D), (E) and (F) violate the commerce clause of the United States Constitution. The Defendant was charged with subsection [E](2). Therefore, the Defendant's challenge is limited to subsection [E](2).

{¶ 34} "Ohio Revised Code Section 2907.07[E](2) provides in pertinent part:

{¶ 35} "[E] No person shall solicit another by means of a telecommunications device, as defined in 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

{¶ 36} "* * *

{¶ 37} "(2) The other person is a law enforcement officer posing as a person who is over twelve but less than sixteen years of age, and the offender believes

that the other person is over twelve, but less than sixteen years of age or is reckless in that regard.

{¶ 38} "Article One of the United States Constitution grants Congress the power to regulate commerce among the several states. (U.S. Constitution, Art. I Section 8 clause 3). When a state imposes a regulation that unduly burdens interstate commerce and impedes free trade, it may violate the dormant commerce clause. In *Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 25 L.Ed.2d 174, 90 S.Ct. 844, at page 142 [25 L.Ed.2d 174, 90 S.Ct. 844], the United States Supreme Court set out the test for determining whether a state statute violates the commerce clause as follows:

{¶ 39} "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce clause is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

{¶ 40} "*People v. Hayne* (March 27, 2002), California 5th Appellate District, No. F036401, Unreported [2002 WL 470853, at *7–8] 2002 Cal.App. Unpub. LEXIS 2650, pages 22–23.

{¶ 41} "The Defendant contends that *American [Libraries] Association v. Pataki* (1997 S.D.N.Y.), 969 F.Supp. 160, is authority in support of his motion. However, the New York statute which *Pataki* held violated the commerce clause did not contain an intent to seduce element. The *Pataki* decision found this distinction important. At page 179 the court stated, 'plaintiffs do not challenge the sections of the statute that ... prohibit adults from luring children into sexual contact by communicating with them via the Internet.'

{¶ 42} "In *People v. Foley* (1999), 257 A.D.2d 243, 692 [N.Y.S.]2d 248, the court upheld the New York Statute. It found that the statute did not violate the commerce clause because it was not intended to regulate commerce, but rather protected children. At page 253 [692 N.Y.S.2d 248] the court stated:

{¶ 43} "Indeed, we cannot conceive of any legitimate commerce involving the sending of graphic images to minors while at the same time attempting to lure them into * * * sexual activity. We conclude that the incidental effects that Penal Law Section 235.22 may have on commerce are not unduly burdensome in relation to the compelling interest of the state in protecting children.

{¶ 44} "On April 11, 2000, this holding was affirmed in *People v. Foley,* 94 N.Y.2d 668, 731 N.E.2d 123, 709 N.Y.S.2d 467, 2000 N.Y. LEXIS 521, cert den. October 2, 2000, 2000 U.S. LEXIS 5898. At page 684 [731 N.E.2d 123, 709 N.Y.S.2d 467] the court concluded, '[the law] does not discriminate against or burden interstate trade; it regulates the conduct of individuals who intend to use the Internet to endanger the welfare of children.'

{¶ 45} "Later, at page 684 [731 N.E.2d 123, 709 N.Y.S.2d 467] the court wrote:

{¶ 46} "We are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity. Indeed, the conduct sought to be sanctioned by Penal Law Section 235.22 is the sort that deserves no 'economic' protection.

{¶ 47} "This issue was also decided in favor [of] the State in *Hatch v. Superior Court* (2000), 80 Cal.App. 4th, 170 [94 Cal.Rptr.2d 453]. At page 195 [94 Cal.Rptr.2d 453] the court stated:

{¶ 48} "That is to say that the validity of the *Pataki* analysis vel non is not controlling here because the intent to seduce element in Section 288.2 is a distinction of the utmost significance. While a ban on the simple communications of certain materials may interfere with an adult's legitimate rights, a ban on communication of specified matter to a minor for purposes of seduction can only effect the rights of a very narrow class of adults who intend to engage in sex with minors. We have found no case which gives such intentions or the communications employed in realizing them protection under the dormant commerce clause.

{¶ 49} "*People v. Hayne,* supra, cited *Hatch,* with approval.

{¶ 50} "The Defendant raises the issue that the Ohio statute unlawfully intrudes upon the Internet users of other States and the World and the domestic policies of other states. He argues the statute gives prosecutors from Ohio the ability to bring charges against anyone in the country. Therefore, he argues, the statute violates the commerce clause because it creates extraterritorial practical effects and exceeds the inherent power of this state.

{¶ 51} "Ohio has jurisdiction to prosecute crimes that are partially committed in the state and also where the object of the crime is located in Ohio.

{¶ 52} "O.R.C. 2901.11(A), Criminal Law Jurisdiction, provides in pertinent part: 'A person is subject to criminal prosecution and punishment in this state if any of the following occur:

{¶ 53} " '(1) The person commits an offense under the laws of this state, any element of which takes place in this state. * * *

{¶ 54} " '(3) While out of this state, the person conspires or attempts to commit, or is guilty of complicity in the commission of, an offense in this state.

{¶ 55} " '(4) While out of this state, the person omits to perform a legal duty imposed by the laws of this state, which omission affects a legitimate interest of the state in protecting, governing, or regulating any person, property, thing, transaction, or activity in this state. * * *

{¶ 56} " '(7) The person, by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, causes or knowingly permits any writing, data, image, or other telecommunication to be disseminated or transmitted into this state in violation of the law of this state.'

{¶ 57} "The Defendant's targeted minor-victim was located in Ohio. The Defendant drove into Ohio in search of his intended minor-victim. The recipient of the Defendant's Internet communications was located in Ohio, and the Defendant was given notice of this during the communications. These over-extension and over-breadth arguments do not apply to this case.

{¶ 58} "The Defendant argues that there can be no crime because there was no real victim. This question was addressed in the context of a similar Internet sting operation by the Wisconsin Supreme Court in *State v.* [*Robins*] (2002), 2002 WI 65 [253 Wis.2d 298], 646 N.W.2d 287, 2002 LEXIS 459. The Court cited substantial authority, consistent with Ohio law that legal impossibility is not a defense in a case of this nature.

{¶ 59} "For these reasons, the Court finds that Ohio Revised Code Section 2907.07[E](2) does not violate the Commerce Clause of the United States Constitution. Therefore, both Defendant's motions to dismiss are overruled."

{¶ 60} We cannot improve upon Judge Jeffrey M. Welbaum's well-reasoned and well-crafted decision. We hereby approve those parts of it quoted above and adopt them as our own.

{¶ 61} Both in his brief on appeal and at oral argument, counsel for defendant attacked the importuning statute as unconstitutional because R.C. 2907.07(E)(1) sets forth an objective standard (knowing or reckless) when a real juvenile is involved, but R.C. 2907.07(E)(2) requires only that the perpetrator "believes" his conversation is with a juvenile when it is actually with a police officer. At first glance, we are not impressed with this argument, but in any case we need not address it, since the record demonstrates that it was not raised to the trial court. *State v. Coleman* (1988), 37 Ohio St.3d 286, 294, 525 N.E.2d 792.

{¶ 62} We note that this court itself very recently upheld a conviction of importuning wherein the conduct of the police was attacked on the same grounds as set forth in Cunningham's first assignment of error. *State v. Turner,* 156 Ohio

App.3d 177, 2004-Ohio-464, 805 N.E.2d 124. Both assignments of error are overruled, and the judgment is affirmed.

Judgment affirmed.

FAIN, P.J., and WOLFF, J., concur.