OPINION
{¶ 1} Douglas J. Bolden was found guilty upon a plea of no contest in the Montgomery County Court of Common Pleas to one count of importuning, in violation of R.C. 2907.07(E)(2), a felony of the fifth degree. At the time of the offense, R.C.2907.07(E) read as follows:
 {¶ 2} "(E) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:
 {¶ 3} "(1) The other person is over twelve but less than sixteen years of age, and the offender knows that the other person is over twelve but less than sixteen years of age or is reckless in that regard.
 {¶ 4} "(2) The other person is a law enforcement officer posing as a person who is over twelve but less than sixteen years of age, and the offender believes that the other person is over twelve but less than sixteen years of age or is reckless in that regard."[1]
 {¶ 5} The record reveals the following facts. On February 12, 2002, Detective Doug Roderick of the Vice Crimes Unit of the Dayton Police Department logged into a Yahoo chat room, posing as a fifteen year old girl named "sandyjo86." The chat room was the Cincinnati room of the Romance section. Roderick received a message from "Nati_guy," who the detective later learned was Bolden, a twenty-seven year old from Butler County, Ohio. Bolden asked "sandyjo86" her age and where she lived, to which Roderick responded "[15] from Dayton."
 {¶ 6} Between February 12, 2002, and May 12, 2002, Bolden had several online conversations with and sent many offline messages to Roderick and Detective Anita Hauser, who continued to pose as "sandyjo86." During these communications, Bolden discussed the various sexual acts that he wished to perform with "sandyjo86" and instructed "her" on masturbation, telling her to "practice." Bolden also sent nude photographs of himself to "sandyjo86." Bolden and "sandyjo86" also discussed talking on the telephone and meeting in person, but no specific plans were made.
 {¶ 7} On June 14, 2002, Bolden was indicted for importuning, in violation of R.C. 2907.07(E)(2), based on his communications with "sandyjo86" between February 12, 2002, and April 24, 2002. On July 11, 2002, Bolden moved to dismiss the charge, on the ground that the court lacked jurisdiction over him because he had never entered Montgomery County. The court overruled the motion, stating that R.C. 2907.07 does not require that the offender physically enter Montgomery County. Rather, R.C. 2907.07(F) only requires that the solicitation be contained in a transmission from a telecommunications device. The court further indicated that Bolden had confused jurisdiction with venue and concluded that the case was properly venued in Montgomery County, pursuant to R.C. 2901.12(I)(1).
 {¶ 8} On October 25, 2002, Bolden again sought dismissal of the charge, alleging that R.C. 2907.07(D), (E) and (F) violate the Commerce Clause of the United States Constitution. Bolden contended that R.C. 2907.07 sought to regulate a "wholly national network" and unlawfully intruded upon internet users of other states by enforcing the laws of Ohio beyond its borders. Subsequently, on October 31, 2002, Bolden filed a motion to dismiss the charges against him, on the ground that the police had engaged in outrageous government conduct "in attempting to lure the Defendant into [Montgomery County] in order to procure an arrest and subsequently a conviction." The trial court overruled the motion based on the Commerce Clause, reasoning that R.C. 2907.07 did not excessively burden interstate commerce and that Bolden's cited authority, American Library Assn. v. Pataki
(S.D.N.Y 1997), 969 F. Supp. 160, was unpersuasive. On January 16, 2003, the court held an evidentiary hearing on the issue of outrageous government conduct. The following day, the court overruled Bolden's motion to dismiss, concluding that there was no evidence that the Dayton police officers had engaged in any conduct that shocked the conscience under Rochin v. California
(1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (forcible removal of morphine tablets from the defendant's stomach violated due process), or that constituted a violation of Bolden's protected rights under Hampton v. United States (1976),425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (defendant was limited to an entrapment defense where a government informant supplied heroin to the defendant, who was then convicted of distributing the drug to government agents).
 {¶ 9} On March 4, 2003, Bolden filed a motion to compel, arguing that the state had failed to turn over the complete chat logs to him. He further requested an opportunity for a computer expert to search the Dayton Police Department's computers that were used in the investigation. After an evidentiary hearing on the motion to compel, which was held on March 4, 2003, the court overruled the motion. Shortly thereafter, Bolden entered a no contest plea to the sole count of importuning. The court sentenced him to five years of community control sanctions and designated him a sexually oriented offender.
 {¶ 10} Bolden raises six assignments of error on appeal.
 {¶ 11} "The trial court erred in failing to grant the appellant's motion to dismiss due to outrageous government conduct and the violation of the appellant's right to due process."
 {¶ 12} Bolden claims that the Dayton police officers engaged in outrageous government conduct, thus warranting dismissal of the importuning charge against him.
 {¶ 13} "The concept of outrageous governmental conduct as a due process defense was first recognized by dictum in UnitedStates v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637,36 L.Ed.2d 366, and a later plurality decision, Hampton v.United States (1976), 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113."State v. Cunningham, Miami App. No. 2003-CA-17, 2004-Ohio-1935, at ¶ 12. In Russell, the Supreme Court stated: "We may some day be presented with a situation in which the conduct of the law enforcement agencies is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction.'" Id. at 431-32. The law enforcement conduct must violate "fundamental fairness" and be "shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." Id. at 432. In Hampton,
the Supreme Court expounded on Russell, stating that "the limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant."
 {¶ 14} We have recognized the defense of outrageous government conduct. Cunningham, supra; State v. Napier (May 22, 1998), Montgomery App. No. 16550; State v. Feltner, (Aug. 16, 1989), Miami App. No. 88-CA-34. In Feltner, we followed a footnote contained in State v. Doran (1983), 5 Ohio St.3d 187
at 192, which stated that "[a]n accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process."
 {¶ 15} Moreover, we have identified two ways in which the outrageous government conduct defense is distinct from the entrapment defense. Cunningham, supra, at ¶ 14-15. First, whereas the entrapment defense focuses upon the predisposition of the defendant to commit the crime, the outrageous governmental conduct defense focuses upon the government's conduct. Id. at ¶ 14; see United States v. Johnson (C.A. 6, Sept. 5, 2000), App. No. 99-3259. Second, the outrageous government conduct defense "is determined as a matter of law prior to trial while, in contrast, the entrapment defense is determined by the trier of fact based upon the evidence presented at trial." Id. at ¶ 15, citing Feltner, supra. However, the burden is on the defendant to prove both defenses. United States. v. Pedraza (C.A. 10, 1994), 27 F.3d 1515, 1521, certiorari denied, 513 U.S. 941,115 S.Ct. 347, 130 L.Ed.2d 303.
 {¶ 16} In our recent decision in Cunningham, we acknowledged that defendants have attempted, unsuccessfully, to raise an outrageous government conduct defense based on government sting operations. For example, in United States v.Mosley (C.A. 10, 1992), 965 F.2d 906, a case involving an undercover investigation of drug trafficking, the Tenth Circuit rejected the defendant's attempt to raise the defense, stating that the outrageous governmental conduct defense "is an extraordinary defense reserved only for the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense." Id. at 910. The Tenth Circuit has reiterated that police must be given leeway in investigating the depth and extent of a criminal enterprise. United States v. Scull (C.A. 10, 2003),321 F.3d 1270.
 {¶ 17} In reviewing claims of outrageous government conduct, we look at the totality of the circumstances. See Mosley,965 F.2d at 910; United States v. Nolan-Cooper (C.A. 3, 1998),155 F.3d 221. In Cunningham, we noted that the Tenth Circuit had identified two factors which form the underpinnings for most cases where the outrageous conduct defense has been upheld: (1) government creation of the crime, and (2) substantial coercion.Cunningham, supra, at ¶ 27, citing United States v. Sneed
(C.A. 10, 1994), 34 F.3d 1570; Mosley, supra. Applying that two-pronged approach to the circumstances in Cunningham, where the police placed the persona of "Missy," a fourteen year old girl, in an internet chat room, we found that the police officer's conduct was not outrageous. Adopting the decision of the trial court, we reasoned:
 {¶ 18} "As to the first element, Peoples[, the detective of the Miami County Sheriff's Office,] did not create the crime. Peoples merely gave the Defendant the opportunity to solicit sex from a person who the Defendant believed was a fourteen-year-old minor on the Internet. The situation is analogous to the traditional solicitation case where a `john' solicits sex from an undercover officer posing as a prostitute on a street corner. The fact that the undercover officer is present on the street corner posing as a prostitute does not mean that the crime was created by the officer. Rather, the undercover officer presents the opportunity for the solicitation to occur. The offender initiates the unlawful solicitation conduct under the mistaken assumption that the officer is a prostitute. Cleveland v. Bordenkircher
(March 4, 1993), Cuyahoga App. No. 61861, Unreported, 1993 WL 63377.
 {¶ 19} "Here, `Missy' did no more than stand on a cyberspace street corner which could be frequented by females looking to have sex with older men and answer the Defendant's questions. Although there may be disagreement in the populous whether such activity is fair in order to constitute outrageous conduct, revulsion to the tactics must be overwhelming and universal. Use of decoy prostitutes as a means to snare `johns' has never been considered so egregious by any court to support this due process defense.
 {¶ 20} "As to the second element, the law enforcement conduct here was not coercive. The law enforcement contribution to the mix was passive. Peoples situated the persona of Missy in a chat room that would likely be frequented by adults looking to have illegal sex with minors. Peoples did not initiate any messages that included a desire for the fictitious fourteen-year-old to have sex beyond the inference of her communication presence in the chat room. Peoples merely responded to the questions and ideas that were repeatedly proposed by the Defendant. There was no coercion present here.
 {¶ 21} "Finally, the Defendant intimated at the hearing that the photograph of the girl sent to him was so overly enticing that use of it by Peoples was outrageous. The photograph depicts a pretty, wholesome, and apparently engaging fourteen-year-old girl. The photograph may have been sufficient in the Defendant's mind to warrant driving an Infinity Q-45 five hours from Tennessee, but is not so overwhelming to launch a thousand ships. The Helen of Troy Defense is not applicable here." Cunningham,
supra, at ¶ 28-31.
 {¶ 22} Turning to the case before us, Bolden contends that we should apply the approach set forth in People v. Wesley (1990),224 Cal.App.3d 1130, 274 Cal.Rptr. 326, to determine whether the actions of the state constitute outrageous government conduct. Therein, the court identified four "illustrative" factors, none of which is determinative: (1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in ongoing criminal activity; (2) whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice; (3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation of exorbitant gain, or by persistent solicitation in the face of unwillingness; and (4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace.
 {¶ 23} Applying the Wesley approach, Bolden argues that there was no ongoing criminal activity afoot and that the police "lurked in adult chat rooms targeting unsuspecting individuals to enter so they may strike up improper conversations." Second, he states that the police consistently offered overwhelming encouragement to commit importuning. Third, Bolden argues that it is clear that he did not want to break the law. He notes that the police initiated the overwhelming number of conversations and pursued him with off-line messages when he failed to respond to "sandyjo86." Fourth, Bolden states that the state was not acting to protect a victim, because he had flatly stated that he did not want to have sex or meet with the fifteen year old. Thus, he claims that the police were merely focused on getting a conviction, as opposed to protecting the populace.
 {¶ 24} Considering the totality of the circumstances, we find no outrageous government conduct on the part of the Dayton police detectives. As with Detective Peoples in Cunningham, Roderick did no more than to make "sandyjo86" available to Bolden on a "cyberspace street corner." Although Roderick initiated 20 out of 27 messages to Bolden, the detective did not initiate the sexual nature of the conversation, and did not propose that Bolden engage in sexual activity with "her". Upon review of the chat room logs, it is clear that Bolden instigated the sexually explicit conversation and asked "sandyjo86" if she would engage in sexual activity with him. For example, on February 12, 2002, he wrote:
 {¶ 25} "nati_guy_513_420: we could go to see a movie and get dinner some night .. no sex!"
 {¶ 26} "sandyjo86: thats kewl, whatever u want"
 {¶ 27} "nati_guy_513_420: or i cold have u meet me at a hotel room and we could just have sex"
 {¶ 28} "sandyjo86: how would we do that?"
 {¶ 29} "nati_guy_513_420: any hotels clos eo toyu"
 {¶ 30} "nati_guy_513_420: close to you?"
 {¶ 31} "sandyjo86: yea theres alot in dayton"
 {¶ 32} "nati_guy_513_420: can u sneak out and get to one?"
 {¶ 33} In the same conversation, Bolden also asked "sandyjo86" when she would turn sixteen and asked, "u want to get fucked before then?"
 {¶ 34} The record demonstrates that the police merely made themselves available to Bolden in the chat room, that Bolden knew from their initial exchanges that "sandyjo86" was fifteen years old, and that the detectives merely responded to the suggestions made by "nati-guy". The police did not manufacture the crime nor engage in outrageous conduct by their presence in the chat room.
 {¶ 35} In addition, upon review of the logs, we do not find that the police offered "overwhelming encouragement" to Bolden. Although Bolden does not specify what behavior he considers to have been overwhelmingly encouraging, the detectives did not engage in conduct that "shocks a sense of justice" when they sent Bolden a photograph of a fifteen year old in a cheerleading outfit, by responding to his sexual questions and suggestions, by pretending to have "practiced" (i.e. masturbated), and by stating that he seemed really nice.
 {¶ 36} Finally, Bolden emphasizes that he had no desire to meet with "sandyjo86" while she was fifteen years old and, therefore, there was no victim that was being protected. Bolden notes that in the end of April and in May, he had written to "sandyjo86" that maybe they could meet when she turned sixteen and that he would get in trouble with the law if they met before then.
 {¶ 37} We have repeatedly stated that, unlike the charge of attempted unlawful sexual conduct with a minor, importuning refers only to the solicitation by the telecommunications device.State v. Schaefer, 155 Ohio App.3d 448, 451, 2003-Ohio-6538,801 N.E.2d 872; State v. Priest, Montgomery App. No. 19223, 2002-Ohio-6787. Thus, to violate R.C. 2907.07(E), Bolden need not have taken any steps to meet with "sandyjo86." As expressed by the state, the harm is in the asking. Thus, Bolden's April 24, 2002, statement to "sandyjo86" that they would have to wait until she was sixteen years old to have sexual relations does not nullify his ostensibly sincere prior solicitations that he and "sandyjo86" engage in sexual activity. (We note that Bolden was not indicted based on the communications subsequent to April 24, 2002.) Accordingly, although Bolden undisputedly took no steps to meet with "sandyjo86," we have no difficulty finding that the police acted to protect the populace from a harm identified by the Ohio legislature, importuning. We therefore conclude that Bolden has not demonstrated that the state engaged in conduct that was so shocking that it offended a "universal sense of justice" or that violated a protected right. The trial court properly overruled Bolden's motion to dismiss based on outrageous government conduct.
 {¶ 38} As part of his first assignment of error, Bolden also claims that R.C. 2907.07 is facially unconstitutional under the United States Constitution. He argues that R.C. 2907.07(E)(1) sets forth an objective standard (knowing or reckless) when a real minor is involved but that R.C. 2907.07(E)(2) only requires that the offender "believe" that he is conversing with a juvenile when the victim is actually a police officer posing as a minor between the ages of thirteen and fifteen. Although Bolden has not clearly articulated his constitutional challenge, he appears to argue that the statute violates the Due Process and Equal Protection Clauses of the United States and Ohio Constitutions, because there is no rational basis for using an objective standard for R.C. 2907.07(E)(1) yet a subjective standard for R.C. 2907.07(E)(2). As noted by the state, Bolden did not present this constitutional argument to the trial court. Accordingly, we need not and will not address it. Cunningham, supra, citingState v. Coleman (1988), 37 Ohio St.3d 286, 294.
 {¶ 39} Bolden's first assignment of error is overruled.
 {¶ 40} "The trial court erred in failing to grant the appellant's motion to dismiss due to a violation of the Commerce Clause of the U.S. Constitution."
 {¶ 41} "R.C. 2907.07(F) Is violative of the Commerce Clause of the U.S. Constitution."
 {¶ 42} In his second and sixth assignments of error, Bolden claims that R.C. 2907.07(D), (E) and (F) violate the Commerce Clause of the United States Constitution. He argues that the Ohio legislature "is attempting to regulate a system which due to its vast nature invokes national control, and it is imposing the laws of Ohio upon other states."
 {¶ 43} Article One, Section 8, Clause 3 of the United States Constitution grants Congress the power to regulate commerce among the several states. "When a state imposes a regulation that unduly burdens interstate commerce and impedes free trade, it may violate the dormant commerce clause." Cunningham, supra, at ¶ 38. "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce clause is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Id. at ¶ 39, quoting Pike v. Bruce Church, Inc. (1970),397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (citations omitted).
 {¶ 44} In Cunningham, we addressed and rejected the same arguments presented by Bolden herein. Adopting the trial court's decision, we concluded that the State of Ohio had not exceeded its territorial authority, stating that "Ohio has jurisdiction to prosecute crimes that are partially committed in the state and also where the object of the crime is located in Ohio." We further found that R.C. 2907.07 did not violate the dormant commerce clause. In doing so, we found the Pataki decision unpersuasive. Rather, we cited, with approval, Hatch v. SuperiorCourt of San Diego County (2000), 80 Cal.App.4th 170,94 Cal.Rptr.2d 453, in which the court stated:
 {¶ 45} "While a ban on the simple communication of certain materials may interfere with an adult's legitimate rights, a ban on communication of specified matter to a minor for purposes of seduction can only affect the rights of the very narrow class of adults who intend to engage in sex with minors. We have found no case which gives such intentions or the communications employed in realizing them protection under the dormant commerce clause." (Emphasis omitted.) Id. at 195.
 {¶ 46} We reiterate herein our conclusion that R.C. 2907.07
(D), (E), and (F) do not violate the Commerce Clause. As concisely summarized by the Third District Court of Appeals inState v. Snyder, 155 Ohio App.3d 453, 2003-Ohio-6399,801 N.E.2d 876:
 {¶ 47} "R.C. 2907.07(E)(2) is narrowly tailored to serve the interest of the state in promoting the welfare of children. R.C.2907.07(E)(2) is unlike many of the statutes challenged in other states and found to be unconstitutional due to vagueness or overbreadth. Cyberspace Communications, Inc. v. Engler
(E.D.Mich. 1999), 55 F. Supp.2d 737; Am. Libraries Assn. v.Pataki (S.D.N.Y. 1997), 969 F. Supp. 160. R.C. 2907.07(E)(2) does not regulate the mere transmission of pictures, images, or messages that are deemed harmful to children. Rather, R.C.2907.07(E)(2) regulates the conduct of adults who seek to solicit minors to engage in sexual activity in conversations by means of the Internet or other telecommunications devices. Since such conduct is not protected by the First Amendment and serves no meaningful purpose, R.C. 2907.07(E)(2) does not unduly interfere with interstate commerce." Snyder, 155 Ohio App.3d at 467.
 {¶ 48} Bolden's second and sixth assignments of error are overruled.
 {¶ 49} "The trial court erred in failing to grant the appellant's motion to compel."
 {¶ 50} In his third assignment of error, Bolden claims that the trial court erred in failing to compel the production of certain transcripts of chat logs which Bolden alleged were missing. Bolden asserts that three conversations were missing from the state's records: a conversation on March 9, 2002, a conversation on April 25, 2002, and one after April 25, 2002, in which Bolden told "sandyjo86" that he would never meet with her. Because Roderick's undisputed testimony indicated that the state provided all of the logs in its possession, we address whether Bolden's rights were violated based on the state's alleged failure to preserve and to disclose these logs.
 {¶ 51} The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370. "The United States Supreme Court has held that a State's failure to preserve evidence does not automatically render such failure a constitutional defect, which would warrant a dismissal of the charge. California v. Trombetta (1984),467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413. In Trombetta,
the Court specifically noted that `[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.' Id." State v.Cahill, Shelby App. No. 17-01-19, 2002-Ohio-4459.
 {¶ 52} To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Franklin, supra (quotingTrombetta, 467 U.S. at 489) (failure to preserve breath samples did not violate due process); Illinois v. Fisher (2004), 540 U.S. ___, 124 S.Ct. 1200, 157 L.Ed.2d 1060. When evidence is only potentially exculpatory, the destruction of such evidence does not violate due process if the police act in good faith and the evidence is disposed of in accordance with normal procedures.State v. Rains (1999), 135 Ohio App.3d 547, 553, 735 N.E.2d 1, citing Arizona v. Youngblood (1988), 488 U.S. 51, 58,109 S.Ct. 333, 102 L.Ed.2d 281. In other words, when faced "with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," due process is violated only if the state acted in bad faith.Fisher, supra, citing Youngblood, 488 U.S. at 57. "Typically, the burden of proving that lost or destroyed evidence is materially exculpatory and that the evidence cannot be obtained by other reasonable methods is placed on the defendant."Cahill, citing Trombetta, 467 U.S. at 488-489 and Columbusv. Forest (1987), 36 Ohio App.3d 169, 171-172, 522 N.E.2d 52.
 {¶ 53} Turning to the case before us, Roderick testified at the hearing on March 4, 2002, that he had created a narrative report that summarized the various communications between "sandyjo86" and Bolden. The narrative report apparently included a summary of a conversation on March 9, 2002; however, the chat logs do not contain a conversation on that date. In addition, Bolden testified that although he twice told "sandyjo86" that "I'm never, ever going to meet you," those conversations are not contained in the chat logs. Bolden testified that these conversations occurred in May 2002.
 {¶ 54} At the end of the hearing, defense counsel requested that the trial court order Roderick to provide a copy of the report so that it could be made part of the record for appellate review. The court responded: "Roderick will deliver to the prosecutor a complete copy of the report. If you'll deliver a copy to me, we will then mark that before the trial as a Court's exhibit for purposes of the record for the appeal * * *." By all appearances, the narrative report was never made part of the record. Bolden entered a no contest plea on March 7, 2002, three days after the hearing. For purposes of our analysis, we will assume that Bolden told "sandyjo86" that he would never meet with her on April 25, 2002 (as argued in this appeal) and in May 2002. We have no record of the substance of the alleged March 9, 2002, conversation.
 {¶ 55} Assuming that the allegedly missing chat logs are as Bolden describes, we do not agree that they were exculpatory, as defined in Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215. As for the conversations on and after April 25, 2002, it is irrelevant whether Bolden eventually told "sandyjo86" that he would never meet with her. As stated, supra, the harm that the importuning statute sought to address was the solicitation of a minor, not sexual conduct with a minor. As noted by Bolden, the rationale for the statute was that "mere solicitation carries a significant potential for harm because of the immature judgment of adolescents and the risk of adverse consequences from their engaging in sexual activity." (p. 5, citing Committee Comment to R.C. 2907.07). Perhaps if Bolden had said contemporaneously with the solicitation that he would not meet with "sandyjo86", thus indicating that the alleged solicitation was not genuine, the repudiation of the solicitation might cast doubt on whether importuning had occurred. That did not happen here. As succinctly put by the trial court at the hearing on the motion to compel, "[t]here is no defense of `I didn't mean it.'" Accordingly, the alleged conversations on or subsequent to April 25, 2002, were not exculpatory. (We further note that Bolden was not indicted based on those conversations.) In addition, we have no evidence that the March 9, 2002, chat log was exculpatory.
 {¶ 56} Because the allegedly missing chat logs were not materially exculpatory, the state's failure to preserve them violates due process only if the state acted in bad faith. Roderick testified that it was possible that he had "saved over" the March 9, 2002, chat log accidentally. He further testified that he was not aware of any chat logs that were deleted or destroyed, intentionally or unintentionally. There is no evidence that Roderick acted in bad faith with regard to the allegedly missing chat logs. Accordingly, the state's conduct did not violate Bolden's due process rights, and the trial court properly denied Bolden's motion to compel.
 {¶ 57} Bolden's third assignment of error is overruled.
 {¶ 58} "R.C. 2907.07(E)(2) IS NOT A SEXUALLY ORIENTED OFFENSE"
 {¶ 59} Bolden challenges the trial court's determination that R.C. 2907.07(E)(2) is a sexually oriented offense.
 {¶ 60} R.C. 2950.01(D) defines a "sexually oriented offense." At the time of his sentencing, that statute provided:
 {¶ 61} "(D) `Sexually oriented offense' means any of the following:
 {¶ 62} "(1) Any of the following violations or offenses committed by a person eighteen years of age or older:
 {¶ 63} "(a) Regardless of the age of the victim of the offense, a violation of section 2907.02, 2907.03, or 2907.05 of the Revised Code;
 {¶ 64} "(b) Any of the following offenses involving a minor, in the circumstances specified:
 {¶ 65} "(i) A violation of section 2905.01, 2905.02, 2905.03,2905.05, or 2907.04 or former section 2905.04 of the Revised Code when the victim of the offense is under eighteen years of age;
 {¶ 66} "(ii) A violation of section 2907.21 of the Revised Code when the person who is compelled, induced, procured, encouraged, solicited, requested, or facilitated to engage in, paid or agreed to be paid for, or allowed to engage in the sexual activity in question is under eighteen years of age;
 {¶ 67} "(iii) A violation of division (A)(1) or (3) of section 2907.321 or 2907.322 of the Revised Code;
 {¶ 68} "(iv) A violation of division (A)(1) or (2) of section2907.323 of the Revised Code;
 {¶ 69} "(v) A violation of division (B)(5) of section 2919.22
of the Revised Code when the child who is involved in the offense is under eighteen years of age;
 {¶ 70} "(vi) A violation of division (D) or (E) of section2907.07 of the Revised Code."
 {¶ 71} Bolden argues that R.C. 2950.01(D)(b)(vi) should not include violations of R.C. 2907.07(E)(2), because R.C.2907.07(E)(2) involves a police officer, not a minor. He asserts that the Ohio legislature intentionally bifurcated R.C.2907.07(E) into two subsections, only one of which involved an actual minor. Bolden states that since criminal statutes must be construed against the state and since R.C. 2907.07(E)(2) does not involve an actual minor, a violation of that statute cannot be a sexually oriented offense.
 {¶ 72} The state responds that the plain language of R.C.2950.01(D)(b)(vi) states, without qualification, that violations of R.C. 2907.07(E) are sexually oriented offenses. The state further notes that the legislature was capable of making only certain subsections sexually oriented offenses, as demonstrated by R.C. 2950.01(D)(1)(b)(iii), (iv) and (v).
 {¶ 73} We agree with the state that a violation of R.C.2907.07(E)(2) is a sexually oriented offense. The plain language of R.C. 2950.01 indicates that any violation of R.C. 2907.07(E) is a sexually oriented offense. The legislature did not distinguish between the subsections of R.C. 2907.07(E), i.e., where the victim was an actual minor between the ages of thirteen and fifteen as opposed to a police officer posing as such a minor. The legislature clearly knew how to distinguish between these sections yet chose not to do so. The fact that the legislature indicated that R.C. 2950.01(D)(1)(b) applied to "the following offenses involving a minor" does not create the ambiguity asserted by Bolden, considering that the aim of R.C.2907.07, in its entirety, is to protect minors from solicitation to engage in sexual activity. Moreover, we agree with the trial court that "the citizens of the State of Ohio are equally entitled to protection from an offender who actually communicates with a minor as well as from an offender who simply believes he is conversing with a minor, but instead is communicating with a law enforcement officer, and to interpret the applicable statutes otherwise would lead to a nonsensical result." It is well-established that the purpose of R.C. Chapter 2950 is to protect the public, not to punish the offender. State v. Cook
(1998), 83 Ohio St.3d 404, 700 N.E.2d 570. Accordingly, the trial court properly concluded that a violation of R.C. 2907.07(E)(2) is a sexually oriented offense, pursuant to R.C.2950.01(D)(1)(b)(vi).
 {¶ 74} Bolden's fourth assignment of error is overruled.
 {¶ 75} "The court erred in denying the appellant's motion to dismiss since the Montgomery County Court's [sic] had no jurisdiction over the appellant."
 {¶ 76} In his fifth assignment of error, Bolden claims that the trial court lacked jurisdiction over him because he was never physically present in Montgomery County. Bolden relies uponState v. Moller, Greene App. No. 2001-CA-99, 2002-Ohio-1890, in which we stated that the Xenia police were within their power to arrest and to prosecute the defendant for attempted unlawful sexual conduct with a minor after he entered the Xenia city limits and committed at least one element of the offense. We had noted that the Xenia police did not have the authority to arrest individuals outside their territory. Id., citing Section III, Article XVIII of the Ohio Constitution.
 {¶ 77} The state responds that the Montgomery County Court of Common Pleas had subject matter jurisdiction over Bolden's offense, pursuant to R.C. 2931.03 and R.C. 2901.11(A)(1). The state asserts that venue was proper in the trial court, pursuant to R.C. 2901.12(I)(1), because Bolden committed the offense by transmitting his solicitation of "sandyjo86" into Montgomery County via a computer. The state further asserts that Moller is inapposite, because the issue therein was whether the Ohio Constitution conferred the power upon the Xenia police to initiate internet conversations with individuals outside of the municipal limits.
 {¶ 78} As stated by the trial court, Bolden has confused personal jurisdiction with venue. As a citizen of the state of Ohio, courts in this state may exercise personal jurisdiction over him. As to whether Montgomery County was the proper venue for raising the charges against him, the trial court properly recognized that this issue is squarely addressed by R.C. Section2901.12. That section provides, in pertinent part:
 {¶ 79} "(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, date, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense."
 {¶ 80} Because the Dayton police department's computers were located in Montgomery County and Bolden transmitted his solicitations to those computers, Bolden was properly charged with importuning in Montgomery County.
 {¶ 81} We also agree with the trial court that Bolden's reliance upon Moller was misplaced. As stated by the court:
 {¶ 82} "In Moller, the Defendant was charged with attempted unlawful sexual conduct with a minor, in violation of O.R.C. Section 2907.04. That attempt requires a substantial step to be taken in furtherance of the offense. The court found that the Defendant had taken a substantial step toward that offense when he entered the jurisdiction of the court. Further, the statute at issue in the case at bar was enacted after the Defendant was charged in Moller."
 {¶ 83} Accordingly, the trial court properly denied Bolden's motion to dismiss, on the ground that the trial court lacked jurisdiction over him.
 {¶ 84} Bolden's fifth assignment of error is overruled.
 {¶ 85} Having overruled each of Bolden's assignments of error, the judgment of the trial court will be affirmed.
Judgment affirmed.
Brogan and Young, JJ., concur.
[1] Effective May 7, 2002, R.C. 2907.07(E)(1) and (2) were modified to read "thirteen years of age or older" in place of "over twelve." In addition, the phrases "the offender is four or more years older than the other person" and "and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age" were added to R.C.2907.07(E)(1) and (E)(2), respectively. S.B. 175. In 2003, subsection (E) was renumbered as R.C. 2907.07(D), but otherwise remained the same. S.B. 5.